James R. NEWSOME *v.* STATE of Arkansas

CA CR 00-1006 42 S.W.3d 575

Court of Appeals of Arkansas
Division I
Opinion delivered April 4, 2001

*Ben Beland*, Public Defender, by: *Claire Borengasser*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Misty Wilson Borkowski*, Ass't Att'y Gen., for appellee.

LARRY D. VAUGHT, Judge. Appellant was charged with aggravated robbery arising from the robbery of a convenience store. At a jury trial, appellant was convicted and sentenced to ten years in the Department of Correction. On appeal, appellant contends that the trial court erred (1) in refusing to instruct the jury on robbery and theft by threat, and (2) in allowing the testimony of the State's expert witness when defense counsel was not given sufficient notice that the State intended to call the witness. We affirm.

Appellant does not challenge the sufficiency of the State's evidence; therefore, it is not necessary to set out the facts in detail. Suffice it to say that appellant was identified by the owner of a

convenience store as the man who robbed her at gunpoint. Appellant first contends that the trial court erred in not allowing robbery and theft by threat jury instructions be given to the jury when there was evidence appellant did not have a gun. The State responds that appellant did not preserve this argument for appellate review because he did not proffer the jury instructions he contends should have been given. We agree.

■■ The supreme court has stated that an appellant who seeks reversal based on the failure to instruct the jury as requested by the appellant must present a record showing a proffer of the requested instruction. *Watson v. State*, 329 Ark. 511, 951 S.W.2d 304 (1997). Where the record does not contain any such proffer, we must affirm. *Id.* Appellant's abstract does not include a proffer of the instructions requested by appellant; therefore, we affirm the trial court's refusal to give the requested instructions.

Appellant's second argument is that the trial court erred in allowing the testimony of the State's expert witness when defense counsel was not given sufficient notice that the State intended to call the witness and the appellant was prejudiced as a result. The witness, Dr. Chambers, was originally a potential defense witness that appellant decided not to call.

Prior to trial, appellant's counsel filed several motions asking the trial court to order psychiatric evaluations of the appellant, which the trial court granted. The last motion was filed on February 9, 2000, asking for a continuance and further evaluation of appellant. On April 3, 2000, the trial court entered an order authorizing the hiring of Dr. Chambers, a local psychiatrist, to conduct further mental evaluation.

Appellant's counsel filed a motion for discovery on April 10, 2000, and also filed a motion to compel discovery the same day. Although appellant's abstract does not so reflect, the State, according to the supplemental abstract, responded on April 24, 2000, stating that it had an open-file policy and listing Dr. John Anderson of the Arkansas Department of Human Services as a potential witness. The State's supplemental abstract also includes its motion for discovery filed April 10, 2000, requesting, *inter alia*, that it be informed of and permitted to inspect and copy or photograph any reports or statements of experts, made in connection with the case, including results of physical or mental examination and/or scientific tests, experiments, or comparisons. The appellant's abstract does

not reflect that he filed a response to the State's motion for discovery.

A jury trial was scheduled for May 8, 2000, which was a Monday. On the Wednesday before trial, the prosecutor called appellant's counsel and asked for Dr. Chambers's report on the examination of appellant. Appellant's counsel contends that the prosecutor only asked who had seen appellant. Because appellant had no report of Dr. Chambers's examination as none had been prepared, the State subpoenaed Dr. Chambers on Friday and faxed a notice to appellant's counsel on Sunday informing him that Dr. Chambers would be called as a witness.

At trial, appellant's counsel objected to Dr. Chambers testifying. The trial court postponed his testimony to the following morning to give appellant's counsel an opportunity to interview him. Appellant claims that the forty-five-minute interview was insufficient to prepare an adequate cross-examination of Dr. Chambers. The trial court in overruling appellant's objection stated that Dr. Chambers was a potential defense witness and thus the defense could not claim surprise as to what Dr. Chambers would say or could have said. Further, the trial court noted that the order allowing the examination was entered April 3, 2000, giving defense counsel adequate time to interview the witness. In addition, the trial court afforded defense counsel the opportunity to interview Dr. Chambers the evening before he testified.

Appellant argues that a discovery violation occurred and that the subsequently admitted testimony of Dr. Chambers prejudiced him. The State responds that there was no discovery violation and that appellant was not prejudiced by Dr. Chambers's testimony.

■ ■ Rule 17.1(a) of the Arkansas Rules of Criminal Procedure provides that "the prosecuting attorney shall disclose to defense counsel, upon timely request, the following material and information which is or may come within the possession, control, or knowledge of the prosecuting attorney: (i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at any hearing or at trial..." In this case the prosecutor did not decide to call Dr. Chambers until after speaking with appellant's counsel the Wednesday before trial and after she was unable to obtain a report from Dr. Chambers's office. As the State contends, this does not appear to be a situation where the prosecutor was using last-minute preparation as a ploy or subterfuge to gain advantage over the defense. *Nooner v. State*, 322 Ark. 87, 907 S.W.2d

677 (1995), *cert. denied*, 517 U.S. 1143 (1996). In *Nooner*, the supreme court stated "We have endowed the trial courts with great discretion over such matters, and the circuit court in this case assessed each assertion of a Rule 17.1(a)(i) violation carefully before making its decisions. The circuit court was reasonable in its resolution of these matters, and we cannot say that it abused its discretion." *Id.* at 99, 907 S.W.2d at 683-84. A trial court has four options under Ark. R. Crim. P. 19.7 to remedy a violation of discovery rules: permit discovery, exclude the undisclosed evidence, grant a continuance, or enter an order as the court deems appropriate under the circumstances. The supreme court has stated that a recess to interview the witness may be sufficient to remedy a discovery violation in some instances. *Nooner v. State, supra.*

▮ The defense requested that appellant be examined by Dr. Chambers, and Dr. Chambers was a potential defense witness. The State was not informed of Dr. Chambers's conclusions after evaluating appellant. Dr. Chambers's testimony was used to corroborate Dr. Anderson's testimony that appellant was competent to stand trial. And defense counsel was given an opportunity to interview Dr. Chambers the night before he testified. Based on these facts, we cannot say that the trial court abused its discretion in allowing Dr. Chambers's testimony.

Affirmed.

PITTMAN, J., agrees.

HART, J., concurs.

JOSEPHINE LINKER HART, Judge, concurring. Although I agree that the result reached by the majority is consistent with the law, I write separately to express my opinion concerning the law. Appellant's communications with Dr. Chambers apparently were not considered to be privileged commensurate with Ark. R. Evid. 503(d)(2),[1] which allowed the State to use those communications as a part of its case–in–chief. As the majority explains, Dr. Chambers was a private psychotherapist whom appellant thought he needed for his defense. Because appellant was indigent and

---

[1] Rule 503(d)(2) of the Arkansas Rules of Evidence provides:

If the court orders an examination of the physical, mental, or emotional condition of a patient, whether a party or a witness, communications made in the course thereof are not privileged under this rule with respect to the particular purpose for which the examination is ordered unless the court orders otherwise.

needed assistance to pay for a private psychotherapist, he was forced to seek the court's approval for the examination. This placed him in an awkward position — on the one hand, honest disclosure to the examiner might have led to a legitimate legal defense; however, on the other hand, too much information may have been dangerous because the State would be privy to what was said to the therapist.

In addition, this rule creates an untenable disparagement between wealthy and poor criminal defendants. For example, the State, having obtained the name of the defendant's psychotherapist through court proceedings, may subpoena a defendant's psychotherapist and use that testimony, as it did here, to buttress its case over the defendant's objection. Thus, the State can circumvent the privilege expressed in that rule of evidence. This situation, however, does not exist when a defendant has the necessary wealth to hire a psychotherapist and is not obligated to disclose such information to the State. Consequently, the wealthy defendant is free to hire multiple psychotherapists without the State's knowledge, and then use one or more psychotherapists as defense witnesses.

While we undoubtedly cannot eliminate every possible advantage that a wealthy person may have over a poor person in our criminal justice system, we should not use that realization as an excuse to deny a defendant a fair trial. Whether a product of poor policy or simple oversight, this rule strengthens the argument of those who believe that if one is poor, the government is in a better position to deprive one of personal liberties than it would be if one were a person of means. In any event, it is a rule that has long since outlived whatever usefulness it may have had, and it should be changed to eliminate the disadvantages that the trial court allowed the State to have in this trial.